# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PAUL LASLIE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-1831 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THE TOWN OF CICERO, | ) | |
| BERNARD HARRISON, LARRY | ) | |
| POLK, and HOPETON ROWE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Laslie has served as an officer with the Cicero Police Department since 2002. He filed suit against three officers in the Department as well as the Town of Cicero, alleging racial discrimination, disability discrimination, and retaliation. The Town of Cicero moved to dismiss for failure to state a claim.

For the reasons stated below, Defendant's motion to dismiss is granted.

### Background

Plaintiff Paul Laslie joined the Cicero Police Department as a patrol officer on January 8, 2002. *See* Am. Cplt., at ¶ 3 (Dckt. No. 28). He alleges that three fellow officers and the Town of Cicero discriminated against him on the basis of his race (he is black) and his disability (he was diagnosed with kidney failure in 2010 and receives dialysis). He also alleges that the officers and the Town retaliated against him after he filed a complaint with the EEOC. *Id.* at ¶¶ 28, 49–52.

The amended complaint describes a wide variety of incidents that happened over a nine-year period from 2011 to 2020. Respectfully, the amended complaint is not a model of clarity,

and leaves a number of holes. Basic details are missing, making it difficult to discern what, exactly, Laslie is alleging. It's not always clear what conduct, in Laslie's view, constituted discrimination or retaliation (on the one hand), and what conduct appears in the complaint simply for context and color (on the other). The discrimination allegations are fuzzy, too. All too often, it is unclear whether he is alleging discrimination on the basis of his disability or on the basis of his race.

That said, the Court reads the amended complaint to allege the following conduct (and if Laslie intended to allege something else, he can file a second amended complaint).

### 2011-2012: Laslie Is Demoted to Patrol Officer, Removed from the Active Roster, and Placed on Probation

In the beginning of 2011, Laslie was promoted from patrol officer to detective. *Id.* at ¶ 10. Shortly thereafter, the Office of the Superintendent told Laslie that he needed to undergo a medical examination. *Id.* Laslie alleges that he was forced to do the exam based "on alleged information [the Superintendent's Office] did not receive from Laslie." *Id.* Perhaps the inference is that asking new detectives to be examined was not a routine procedure. *Id.*

Laslie alleges that he "received documentation from his doctor that he was medically able to work" in February 2011. *Id.* at ¶ 11. But in February 2012, a full year later, "after the forced medical examination," the Department "found [out] that Laslie was being treated for Renal Failure."[1] *Id.* at ¶ 13.

It is not clear how those allegations fit together. Maybe Laslie's doctor performed the examination in February 2011, and the results weren't conveyed to the Department until a year

---

[1] Laslie also alleges that he received treatment for sleep apnea, and that the Department learned about that condition at the same time that it learned about his kidney disease. *See* Am. Cplt., at ¶ 13 (Dckt. No. 103). However, Laslie does not allege that his sleep apnea rose to the level of a disability, or that the Department discriminated against him based on that condition.

later.  Maybe a different doctor also examined him in February 2012 and conveyed the results to the Department.  In any case, Laslie seems to allege that the Department learned about his health issues for the first time in February 2012, after requiring him to undergo a medical exam.

Nine months later, in November 2012, Laslie was demoted to patrol officer.  *Id*. at ¶ 15.  He does not allege who told him that he was being demoted, or why.  He implies that no one gave him a reason for the demotion.  *Id*. (describing the demotion as "inexplicabl[e]" and "without cause").  One possible inference is that Laslie was demoted for medical reasons.  If so, the complaint never says so out loud.

### 2012–2014:  Laslie Requests Time Off for his Dialysis Appointments, Is Denied, Then Is Put on Desk Duty, Issued Written Reprimands, and Has His Pay Docked

After Laslie was demoted to patrol officer, he was assigned to the "3rd shift."  *Id*. at ¶ 17.  The complaint does not specify when that assignment took place.  The surrounding paragraphs describe incidents that took place in 2012 (*id*. at ¶ 15) and 2013 (*id*. at ¶ 20), so presumably the assignment happened in that timeframe.  Apparently that assignment conflicted with his dialysis appointments, so he requested a transfer to a different shift.  *Id*.  That request was denied.  *Id*.  The complaint does not reveal who denied the request, or why.

At some point in 2013, Laslie submitted two more "written request[s] for accommodations due to his illness."  *Id*. at ¶¶ 21, 23.  He does not reveal what kind of accommodations he requested.  He also alleges that he provided "various letter[s] from medical professionals outlining accommodations that were needed," but again, the complaint does not identify what accommodations he needed.  *Id*. at ¶ 26.  Someone at the Department denied those two requests.  *Id*. at ¶¶ 21, 23.  The complaint does not reveal who denied the requests, or why.

Laslie must have continued going to his dialysis appointments because "[b]eginning in 2013, Cicero[,] through the Office of the Superintendent[,] started docking the pay of Laslie for

taking off for medical purposes." *Id*. at ¶ 24. He also alleges that "Superintendent Harrison and others continued to write reprimands for Laslie that were clearly results [sic] of his illness." *Id*. at ¶ 21. The complaint doesn't give any more details about those reprimands. Maybe they were issued for missing work for dialysis appointments, or maybe for some other reason.

Then, "[l]ater in 2013, Superintendent Harrison assigned Laslie to *temporary desk duty*." *Id*. at ¶ 22 (emphasis in original). It's not clear from the amended complaint whether Laslie viewed that assignment as something negative (maybe a demotion?), or something positive (maybe an accommodation?). He emphasizes the phrase "temporary desk duty" by placing it in italics, but it's not clear what the emphasis is meant to communicate.

During that same period, Laslie received two reprimands that were not obviously connected to his disability or his race. He alleges that shortly after he was demoted, in the fall of 2012, he had trouble locating his new supervisor despite his best efforts, and the Department issued a written reprimand for not finding the supervisor quickly enough. *Id*. at ¶¶ 16, 18. He also alleges that sometime in 2013, he received a written reprimand for losing his old detective badge. *Id*. at ¶ 20. If Laslie intended to allege that those reprimands were somehow discriminatory, he does not make that link.

### 2014: Laslie Receives a Letter Telling Him to Resign or He Will Be Fired, Is Suspended from Work and Files a Charge of Discrimination with the EEOC

At some point after Laslie submitted his requests for reasonable accommodations, the Office of the Superintendent "requir[ed]" Laslie to "go to the doctor of Cicero's choosing." *Id*. at ¶ 25. The amended complaint does not disclose why Cicero required him to do the exam. However, the amended complaint alleges that he received "clearance" from that doctor as well as his own doctor to continue working, which suggests that the Department may have wanted reassurance that Laslie was healthy enough to do his job. *Id*. at ¶ 27.

4

Despite receiving that medical clearance, "Laslie was not allowed to come back to work," and was suspended without pay. *Id*. at ¶¶ 27, 30. The complaint does not reveal who made that decision or what reason they gave. But the key point is that he was suspended in 2014.

Around that time – he doesn't say whether it was before or after the suspension – he also received a letter from Superintendent Harrison "telling him to resign, apply for disability from the pension board or get terminated." *Id*. at ¶ 26.

At that point, Laslie filed a Charge of Discrimination with the EEOC, alleging discrimination on the basis of his disability in violation of the ADA, and discrimination on the basis of his race in violation of Title VII. *Id*. at ¶ 28 (alleging that he filed a Charge of Discrimination with the EEOC in 2014). In his Charge of Discrimination, Laslie described what happened in a few short sentences. *See* Exs. to Def.'s Mtn. to Dismiss, at 2 (Dckt. No. 29-1). He stated that he requested "a reasonable accommodation which was not provided," and that he was "subjected to different terms and conditions of employment than White employees, including but not limited to, being provided with light duty assignments." *Id.* It is not clear what "light duty assignments" he was referring to. He also alleged that "Respondent refuses to return me to work." *Id*.

After the EEOC received Laslie's Charge, the Commission "sent a request to the Town of Cicero in 2014 to mediate." *Id*. at ¶ 29. Laslie alleges that the Department "ignored" the EEOC's request. *Id*. However, he did not receive a Right to Sue letter from the EEOC until May 2019, five years later. *Id*. at ¶ 34. The complaint does not explain the five-year gap. Presumably some kind of negotiations were ongoing.

**2015–2020:  Laslie Returns to Work**

In 2015, the Department allowed Laslie to come back to work for the first time since his 2014 suspension.  *Id*. at ¶ 30.  The amended complaint does not reveal who made that decision or how it came about.

The amended complaint alleges that when he returned, "the same behavior continued." *Id*. at ¶ 31.  In particular, he alleges that "no accommodations were made," and that "Cicero continued to write up Laslie and suspend Laslie without pay."  *Id*.  By the "same behavior," the Court understands Laslie to be alleging that his dialysis appointments continued to conflict with his work schedule, that he requested schedule changes, and that Cicero denied those requests. Then, as a result, Laslie missed work to attend his appointments, and someone reprimanded Laslie and briefly suspended him without pay for missing work.  If Laslie intended something else, he can amend his complaint.

In 2017, the Department put Laslie on a "Performance Improvement Plan."  *Id.* at ¶ 32. Laslie alleges that he was put on the plan as a result of "an arbitrary and inherently unfair system of giving points based on stops," and that he was the "first officer" to be placed on the plan.  *Id*. He gives no further details about the point system, or his own performance.  Sometime later, someone made the decision to "extend[]" his time on the performance plan "well into 2018."  *Id*. at ¶ 33.  He does not reveal who made that decision or when they made it.

Finally, in 2020, "a supervisor on the verge of retirement made a request to leave sick time to Laslie."  *Id*. at ¶ 35.  The Department denied that supervisor's request.  *Id*.  Laslie does not reveal if the Department gave a reason.  However, he alleges that "[t]his," meaning transferring sick time, "is a practice that has occurred with several other similarly situated White or Latino officers."  *Id*.

**Paragraph 37 of the Amended Complaint**

Laslie ends the allegations section of his complaint with a mysterious paragraph – paragraph 37. The first sentence of paragraph 37 states: "The actions of 1-35 caused the Plaintiff to suffer what is included [sic] the following non-exhaustive conduct." *Id*. at ¶ 37.

Below that sentence, the complaint lists eight different actions that Defendants allegedly took. It's hard to know how to interpret the list. Five of the eight actions are things that he already described in other paragraphs of the complaint: being removed from the schedule without pay "for months at a time," having his pay docked, being demoted, being denied "equal perks of employment," and having his requests for reasonable accommodations denied. *Id*. However, paragraph 37 also injects three new allegations: (1) he was subjected to "[h]arassment," including having officers "tail[]" him while he was on duty and being subjected to unwarranted criticism as well as "taunts" and "outright threats;" (2) officers spread "false rumors" about him; and (3) he was denied "access to opportunities of advancement" including "taking the sergeant's exam." *Id*.

The Court reads paragraph 37 as a list of the actions that officers took to retaliate against Laslie after he filed his complaint with the EEOC in 2014. That interpretation fits with the phrasing of the first sentence, which states that the "actions" described in the prior paragraphs "caused him to suffer" a series of retaliatory acts. *Id.* at ¶ 37. And it fits with the contents of the list, which describes negative and harassing (although not overtly discriminatory acts) by other officers. Again, if Laslie intended something else, the Court grants him leave to amend his complaint and clarify his allegations.

The Court also notes that in paragraph 39, Laslie makes it clear that he is *not* alleging that the new allegations in paragraph 37 (the harassment, rumors, and denied opportunities for advancement) are incidents of race-based discrimination. *See id.* at ¶ 39 ("Similarly-situated

non-Black police officers and civilian employees of the police department were not subject to the discriminatory treatment plaintiff experienced in the actions *described in 1-35*.") (emphasis added). The allegations about race-based discrimination ended in paragraph "35." *Id.* If Laslie intended to incorporate the allegations in paragraph 37 as incidents of race-based discrimination, he can clarify that intention by filing a second amended complaint.

### 2020: Laslie Files Suit

On March 17, 2020, Laslie filed a one-count complaint against the Town of Cicero, alleging racial discrimination in violation of section 1981. *See* Cplt. (Dckt. No. 1). The Town of Cicero moved to dismiss. *See* Mtn. to Dismiss (Dckt. No. 15).

In response, Laslie filed an amended complaint on July 21, 2020. *See* Am. Cplt. (Dckt. No. 28). He added three new defendants: Bernard Harrison (the Superintendent of Police for the Cicero Police Department at the time in question), Larry Polk (a Commander in the Department), and Hampton Row (a Sergeant in the Department). *See generally* Am. Cplt. (Dckt. No. 28).

The amended complaint added several new counts, too. *Id.* Laslie brought claims against all four defendants under section 1981 and section 1983, alleging racial discrimination and retaliation. He also advanced a few additional claims against the Town of Cicero (only), including racial discrimination and retaliation under Title VII, and disability discrimination under the ADA.

Cicero filed another motion to dismiss, which is now before the Court.

### Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the

complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

When evaluating a motion to dismiss, a court begins by "taking note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Then, turning to the complaint itself, it "accept[s] the well-pleaded facts in the complaint as true," but ignores "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680–81).

When a defendant moves to dismiss based on the notion that a plaintiff has failed to state a "plausible" claim for relief, a court asks whether the plaintiff's well-pleaded factual allegations, taken together, allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That is, the plaintiff's allegations must tell "a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). If they don't, the complaint must be dismissed. *Iqbal*, 556 U.S. at 678.

When a defendant moves to dismiss a claim based on the statute of limitations, a court then asks whether there is "a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). If there is, then the complaint survives, and "questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.* "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir.

2009).  However, the Seventh Circuit recognizes "that a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims," and that "[i]f the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (cleaned up).

## Discussion

The Town of Cicero has moved to dismiss all of Laslie's claims.  *See generally* Def.'s Mtn. to Dismiss (Dckt. No. 29).  Before getting into the merits of the Town's motion, the Court pauses to address two threshold issues related to the way that the counts are numbered in the amended complaint.

First, the amended complaint lists two Count Vs and two Count VIs.  *See* Am. Cplt., at ¶¶ 49–56 (Dckt. No. 28).  The first set of Counts V and VI (*id.* at ¶¶ 49–52) is a pair of retaliation claims under section 1983, and the second set of Counts V and VI (*id.* at ¶¶ 53–56) is a pair of discrimination claims under section 1983.  For the sake of clarity, the Court will refer to the first Count V (for "§ 1983 – RETALIATION") as Count V-1, and the second Count V (for "§ 1983 – DISCRIMINATION") as Count V-2.  The Court will do the same for Count VI-1 and Count VI-2.

So, Count V-1 is a section 1983 retaliation claim against the Town of Cicero.  Count V-2 is a section 1983 discrimination claim against the Town of Cicero.  Count VI-1 is a section 1983 retaliation claim against Harrison, Polk, and Rowe.  Count VI-2 is a section 1983 discrimination claim against Harrison, Polk, and Rowe.  That numbering system is not ideal, but it is the best that the Court can do with this particular pleading.

Second, Laslie's amended complaint groups the first eight counts together in pairs, and each pair purports to sue four Defendants (the Town of Cicero, Bernard Harrison, Larry Polk,

and Hopeton Rowe) under a single cause of action. For example, under the heading "Count I and II," Laslie purports to sue all four Defendants for violating Section 1981. That clumping makes it difficult to know what falls under "Count I" and what falls under "Count II." The Court assumes that, for each pair, the first count refers to Laslie's claim against the Town, and the second count refers to Laslie's claims against the individual defendants. So, for example, Count I refers to Laslie's section 1981 claim against the Town, and Count II refers to Laslie's section 1981 claim against the individual Defendants. If Laslie intended something else, the Court grants him leave to amend.

Now, turning to the merits, Cicero moves to dismiss Laslie's claims under section 1981 (Counts I–IV) on the grounds that section 1981 does not create a right of action against state actors. Next, Cicero moves to dismiss Laslie's claims under Title VII and the ADA (Counts VII–IX) based on the statute of limitations because Laslie filed suit more than 90 days after receiving his Right to Sue letter from the EEOC. Finally, the Town moves to dismiss Laslie's retaliation and discrimination claims under section 1983 (Counts V-1 & VI-1). Cicero argues that the claims are time barred, and that they do not state a plausible *Monell* claim for retaliation or racial discrimination.

For the reasons stated below, Cicero's motion to dismiss is granted in its entirety. But the Court grants Laslie leave to file a second amended complaint.

## I.      Claims Under Section 1981 (Counts I & III)

First, Cicero moves to dismiss Laslie's claims under section 1981. It points out, correctly, that "42 U.S.C. § 1981 does not create a private right of action against state actors," and that the Town of Cicero is a state actor. *Campbell v. Forest Pres. Dist. of Cook Cty.*, 752 F.3d 665, 671 (7th Cir. 2014); *see also* Def.'s Mtn. to Dismiss, at 3 (Dckt. No. 29). Laslie

doesn't dispute this point. In fact, in his response brief, he concedes that he has no cause of action against Cicero under section 1981. *See* Pl.'s Resp. to Def.'s Mtn. to Dismiss, at 3 (Dckt. No. 37).

Therefore, all section 1981 claims against Cicero (Counts I & III) are dismissed.

## II. Title VII and ADA Claims (Counts VII, VIII, & IX)

Next, Cicero moves to dismiss Laslie's claims under Title VII and the ADA. It argues that Laslie's claims are time barred because he filed his complaint more than 90 days after he received his Right to Sue letter from the EEOC. *See* Def.'s Mtn. to Dismiss, at 5–6 (Dckt. No. 29).

A plaintiff must satisfy two different deadlines to bring a timely claim for employment discrimination under Title VII or the ADA. First, the employee must file "a charge of discrimination with the EEOC within 300 days of the alleged 'unlawful employment practice.'" *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (citation omitted); 42 U.S.C. § 2000e-5(e)(1). Second, if the EEOC decides not to pursue the case and issues a "Notice of Right to Sue," the plaintiff must bring a case within 90 days of receiving that notice. *See* 42 U.S.C. § 2000e-5(f)(1); *see also DeTata v. Rollprint Packaging Prod. Inc.*, 632 F.3d 962, 967 (7th Cir. 2011) (explaining that the Seventh Circuit "ha[s] consistently held (as have our sister circuits) that the 90–day period does not start running until the claimant (or her agent) actually receives the right-to-sue letter from the EEOC").

Cicero argues that, based on Laslie's own allegations, he missed that second deadline (*i.e.,* 90 days after receiving the letter from the EEOC). The Court agrees. In his amended complaint, Laslie alleges that he received his Notice of Right to Sue letter from the EEOC in May 2019. *See* Am. Cplt., at ¶ 34 (Dckt. No. 28) ("In May of 2019 . . . Laslie received the right

to sue letter."). Even if Laslie received the letter on the last day of the month – May 31, 2019 – the statute required him to file suit by August 29, 2019. Yet, he didn't file the complaint until March 17, 2020, more than six months after the 90-day deadline had passed. *See* Cplt. (Dckt. No. 1).

In his response, Laslie does not deny what the complaint plainly alleges, namely, that he received the EEOC letter in May 2019. He also does not dispute that he needed to file suit within 90 days. *See* Pl.'s Resp. to Mtn. to Dismiss, at 5–6 (Dckt. No. 37). Instead, he seems to argue that the Court should make an exception and allow him to bring his untimely claims because "technicalities should not be used to bar Title VII claims." *Id.* at 5.

The text of the statute is not a technicality. The Court declines the invitation to rewrite statutory text and hand out exceptions to a rule set by Congress. The Court does not have the power to carve exceptions into federal statutes on the theory that some provisions are unimportant. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring) (emphasizing that courts "cannot take a blue pencil to statutes").

Laslie also points out that the statute of limitations is an affirmative defense, so he is not required to plead around it. That's true. "[A] complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc.*, 559 F.3d at 674.

But that principle does not help him here because Laslie's complaint defeats itself. A party can "plead itself out of court" by alleging facts that establish "an impenetrable defense to its claims." *Tamayo*, 526 F.3d at 1086 (cleaned up). That's exactly what Laslie did here. He alleged that he received the EEOC's Right to Sue letter in May of 2019, long before he filed suit in March 2020. *See* Am. Cplt., at ¶ 34 (Dckt. No. 28). So he pled that he was late. Taking that allegation as true, the statute of limitations bars his claim.

Cicero's motion to dismiss Laslie's claims under Title VII (Counts VII & VIII) and under the ADA (Count IX) is granted.

## III.     Section 1983 Claims (Counts V-1 & V-2)

Finally, Cicero moves to dismiss Laslie's claims under section 1983.  Recall, Laslie alleges that the Town retaliated against him for filing a complaint with the EEOC and discriminated against him on the basis of his race.

Cicero makes two arguments.  First, the Town argues that the two-year statute of limitations bars claims about any conduct that took place before March 17, 2018.  Second, it argues that the remaining allegations do not state a plausible claim for relief.

### A.     Statute of Limitations

Cicero's argument is straightforward.  Laslie filed suit on March 17, 2020, and section 1983 has a two-year statute of limitations.  So, the claims are time barred to the extent that they rest on conduct that took place before March 17, 2018.

State law determines the limitations period for section 1983 claims.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Illinois, the limitations period is two years.  *Woods v. Illinois Dep't of Children & Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013) ("[T]his court has consistently held that the limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13-202.").  However, federal law determines when the claim "accrues" (*i.e.,* when the clock starts to tick).  *See Wallace*, 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (quotations omitted) (emphasis in original).

When a plaintiff alleges that his employer engaged in multiple acts of discrimination, as Laslie does here, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Cigan*

*v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 334 (7th Cir. 2004). The clock for each individual act starts to tick on the day that the act "occurred." *Morgan*, 536 U.S. at 113.

One exception to this rule is the "continuing violations doctrine." That doctrine applies in three circumstances where "it would be unreasonable to require or even permit [a plaintiff] to sue separately over every incident of the defendant's unlawful conduct" because "[t]he injuries about which the plaintiff is complaining . . . are the consequence of a numerous and continuous series of events." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001); *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002). When the continuing violations doctrine applies, the incidents are lumped together, and "the cause of action accrues at . . . the date of the last injury." *Heard*, 253 F.3d at 319 (quoting *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001)). The continuing violations doctrine is an accrual doctrine, not a tolling doctrine. *Id.* ("But the usual and it seems to us the correct characterization of the doctrine of continuing violation is that it is a doctrine governing accrual, not a tolling doctrine, because we don't *want* the plaintiff to sue before the violation is complete.") (emphasis in original) (citation omitted).

### 1.     Accrual

Laslie filed his complaint on March 17, 2020. Therefore, conduct before March 17, 2018 cannot give rise to a claim, unless the continuing violations doctrine applies or unless there is tolling. The Court will address when each act occurred, and then will turn to the continuing violations doctrine and tolling.

The relevant allegations in the complaint appear in paragraphs 8 to 37. The timeliness of most of those allegations is straightforward. Paragraphs 8 to 30 describe conduct that occurred before he returned to work in 2015, so any claims based on that conduct are time barred (again,

15

unless the continuing violations doctrine applies or unless there is tolling). *See* Am. Cplt., at

¶¶ 8–30 (Dckt. No. 28). On the other hand, Laslie also alleges that the Department refused to

allow another officer to transfer his sick time to Laslie in 2020 (described in paragraph 35).[2] *Id.*

at ¶ 35. The claim about 2020 conduct is timely.

The remaining factual allegations (in paragraphs 31, 32, 33, and 37) require a little more

analysis. First, in paragraph 31, Laslie alleges that after he returned to work in 2015, "Cicero

continued to write up Laslie and suspend Laslie without pay." *Id.* at ¶ 31. As discussed above,

the Court interprets this paragraph to allege that Laslie was written up and suspended for missing

work to attend dialysis appointments. Laslie doesn't reveal when any of those write-ups or

suspensions occurred, but to the extent that they occurred before March 17, 2018, a claim about

them is time barred.

Next, in paragraphs 32 and 33, Laslie alleges that the Department decided to put him on a

performance plan in 2017, and then, at some point, decided to "extend[]" his time on the plan

"well into 2018." *Id.* at ¶¶ 32–33. Defendant argues a claim about both of those allegations –

the original decision, and the decision to extend – is time barred because they should be

considered together, as "an act that occurred in 2017 that remained in effect thereafter." *See*

Def.'s Mtn. to Dismiss, at 4 (Dckt. No. 29).

---

[2] Defendant argues, very briefly, in its motion to dismiss that Laslie lacks standing to bring a claim about this incident. Cicero argues that when the Department refused to allow the other employee to transfer his sick time to Laslie, the Department did not take an action "with respect to [Laslie], but with respect to a separate employee." *See* Def.'s Mtn. to Dismiss, at 4 (Dckt. No. 29). Therefore, "even if Laslie stood to benefit from an increase in leave . . . that does not provide [him] any vested entitlement to the benefit or confer on him standing to bring an actionable claim over some other employee's terms of employment." *Id.* at 4–5. That argument lacks merit. Laslie is not alleging that the Department was required to approve the request, or that he was entitled to some kind of due process. He is alleging that the Department denied the request because of racial animus towards Laslie. That decision directly affected Laslie, so he has standing. Laslie has standing to bring that claim because he lost the opportunity to receive sick time.

The Court disagrees. The two decisions are two discrete acts. Laslie is barred from bringing a claim about the original decision because he pleads that it occurred in 2017, more than two years before he filed suit in 2020. However, he is not barred from bringing a claim about the decision to extend the plan, because he does not allege that it occurred on a particular date. It is plausible that it occurred in 2018.

Finally, the Court considers the allegations introduced for the first time in paragraph 37. As discussed above, the Court interprets paragraph 37 as a list of things that other officers did to retaliate against Laslie at some point for submitting a complaint to the EEOC in 2014. In that paragraph, Laslie makes three new allegations. He alleges that officers retaliated against him by: (1) subjecting him to "[h]arassment," including having officers "tail[] him" while he was on duty, and subjecting him to unwarranted criticism as well as "taunts" and "outright threats;" (2) having officers spread "false rumors" about him; and (3) denying him "opportunities of advancement" including "taking the sergeant's exam." *See* Am. Cplt., at ¶ 37 (Dckt. No. 28). Laslie does not allege when any of those actions took place. But again, to the extent they occurred before March 17, 2018, a claim relying on them is time barred.

Next, Cicero makes two overarching arguments about how Laslie may have pled himself out of court with respect to the ongoing conduct described in paragraphs 31 and 37 (*i.e.,* the write-ups, suspensions without pay, harassment, and denied opportunities for advancement). Neither argument has merit.

First, Cicero moves to dismiss the amended complaint based on the content of the original complaint. Specifically, Cicero points out that, in his *initial* complaint, Laslie alleged that the "racial discrimination" that he experienced "abate[d]" in "2017 when a new Chief had been appointed and Plaintiff was transferred to a different shift." *See* Am. Cplt., at ¶ 8 (Dckt.

No. 1).  Plaintiff did not make the same admission in the amended complaint.  Even so, Cicero

argues that the Court can consider that statement in the context of a motion to dismiss the

amended complaint.  In its view, Laslie made an admission that all of the ongoing conduct took

place outside the statutory period, and he is stuck with that admission.

But a defendant cannot move to dismiss an amended complaint based on the content of

an earlier, superseded complaint.  *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83

(7th Cir. 2013) (holding that "facts or admissions from an earlier complaint that are not included

in a later complaint cannot be considered on a motion to dismiss"); *Pirant v. U.S. Postal Serv.*,

542 F.3d 202, 207 (7th Cir. 2008); *Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632,

638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original

complaint and renders the original complaint void."); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d

730, 735 (7th Cir. 2002) ("'An amended pleading ordinarily supersedes the prior pleading.  The

prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and

becomes functus officio.'") (citation omitted); 6 Arthur R. Miller *et al.*, *Federal Practice and

Procedure* § 1476 (3d ed. 2021); *see also* Fed. R. Civ. P. 8(d)(3) (permitting a plaintiff to allege

claims "regardless of consistency").

"For pleading purposes, once an amended complaint is filed, the original complaint drops

out of the picture."  *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).  A motion to dismiss takes

aim at the operative complaint.  The sufficiency of that complaint depends on what appears

within its four corners, not what appears in a prior pleading.

That said, a superseded complaint does not disappear into the ether, never to be seen

again.  An amended pleading does not operate as a "judicial tabula rasa."  *Orgone Cap. III, LLC

v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019) (same).  A party can rely on the other

party's pleadings as statements of a party opponent, so superseded complaints are fair game at trial. An earlier pleading may come back to bite a plaintiff at trial, because the admission does not disappear. Admissions are forever. But a statement in a pleading is an evidentiary admission, not a judicial admission, so it is not case dispositive at the motion to dismiss stage. *See 188 LLC*, 300 F.3d at 736 ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."); *Orgone Cap. III, LLC*, 912 F.3d at 1048 (same); *Pirant v. U.S. Postal Serv*., 2006 WL 3590072, at *4 (N.D. Ill. 2006), *aff'd*, 542 F.3d 202 (7th Cir. 2008), *as modified on denial of reh'g* (Dec. 3, 2008) (explaining that statements in prior pleadings are still considered "evidentiary admission[s]," and can be offered at trial); *Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 778 (7th Cir. 1998) ("Although a superseded pleading sometimes may be offered as evidence . . . a false step early in a case does not blot out the opportunity to prevail on a claim that is sound factually and legally.") (citation omitted).

In other words, while certain allegations in Laslie's initial complaint may be problematic down the road, they are not grounds for dismissal at this stage. *See Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 779 (N.D. Ill. 2009) (holding that even when the defendant accused plaintiff of amending its complaint for the express purpose of avoiding dismissal under Rule 12(b)(3), the court would consider only the amended complaint for the purpose of a motion to dismiss); *Bianchi v. McQueen*, 2014 WL 700628, at *1 (N.D. Ill. 2014), *aff'd*, 818 F.3d 309 (7th Cir. 2016) ("In their second amended complaint, Plaintiffs essentially have altered the allegations contained in their first complaint – in some places adding facts, in other places changing or deleting them, and in many instances contradicting their first complaint entirely – in

an attempt to cure the deficiencies identified by the Court in its Opinion. The Court may consider only the second amended complaint.").

Next, Defendant points out that in his amended complaint, Laslie alleges that "[t]he discrimination suffered by Plaintiff was done at the request of and/or with the approval of the then-Chief of Police and then [sic] Supervisors and are, therefore, attributable to the Town itself." *See* Am. Cplt., at ¶ 38 (Dckt. No. 28). Cicero argues that by "then-Chief of Police," Laslie *must* mean Bernard Harrison, the only defendant who ever served as Superintendent. And Cicero attaches a document to its motion stating that Harrison retired in 2015. Then, Cicero argues that since Harrison retired in 2015, Laslie is admitting that the discrimination against him ended in 2015. *See* Def.'s Mtn. to Dismiss, at 5 (Dckt. No. 29).

But the statute of limitations is an affirmative defense. An affirmative defense provides a proper basis for a Rule 12(b)(6) motion *only* when it is "disclosed in the complaint." *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). An affirmative defense is "disclosed in the complaint" when (1) "the facts that establish the defense are definitely ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice," and (2) "those facts conclusively establish the defense." *Novickas v. Proviso Twp. High Sch. 209*, 2010 WL 3515793, at *2 (N.D. Ill. 2010); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) ("[A] district court [may] take judicial

notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment.").

Here, the amended complaint does not allege when Harrison retired. His retirement is not the kind of fact that the Court can take judicial notice of (unlike, say, when a President left office). A court is permitted to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201. The date that Harrison retired is neither "generally known" within the Northern District of Illinois, nor can it be readily determined from reliable sources. The document that Cicero attaches as support – which appears to be an unofficial document of some kind, titled "Town of Cicero 2014-2015 Appointments (through April 30, 2015)" – does not come close to meeting that standard. *See* Ex. A to Def.'s Mtn. to Dismiss, at 1 (Dckt. No. 29-2).

In sum, claims about the following allegations are time barred unless the statute of limitations was tolled: (1) any conduct that occurred before Laslie returned to work in 2015 (Am. Cplt., at ¶¶ 8–30); (2) any instances of repeated or ongoing conduct (*i.e.,* the write-ups, suspensions without pay, harassment, and denied opportunities for advancement) to the extent that they occurred before March 17, 2018 (*id.* at ¶¶ 31, 37); and (3) the initial placement on the performance plan (*id.* at ¶ 32).

### 2. Continuing Violations Doctrine

Next, Laslie argues that all of his allegations are timely because they form one continuing violation. He characterizes the series of discriminatory acts as a single "cumulative" violation. He argues that his claim about that violation accrued on the date that the last act took place, and

21

the last act took place within the statutory period. *See* Pl.'s Resp. to Mtn. to Dismiss, at 5 (Dckt. No. 37).

The Seventh Circuit has laid out "three theories under which a plaintiff may establish a continuing violation." *Tinner v. United Ins. Co. of America*, 308 F.3d 697, 707 (7th Cir. 2002). A continuing violation takes place if the plaintiff proves that (1) the employer made "employment decisions over time that ma[d]e it difficult for the employee to determine the actual date of discrimination;" (2) the employer had an "express discriminatory policy;" or (3) "discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period." *Id.*

Laslie seems to argue that his case fits under theory three, *i.e.,* that "discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period."[3] *Id.* This theory, sometimes referred to as the "cumulative violations doctrine," permits a plaintiff to delay suing "until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008); *see also Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997) ("[D]uration is often necessary to convert what is merely offensive behavior . . . into an actionable alteration in the plaintiff's working conditions.") (internal citations omitted).

In his brief, Laslie doesn't give many details about why he believes that the continuing violations doctrine applies. But he does provide one clue: he cites a Supreme Court case

---

[3] If Laslie is arguing something else, the Court also notes that neither theory one nor theory two applies. Theory one does not apply because Laslie describes a series of discrete actions: demotions, reductions in pay, specific negative or harassing comments, the denial of specific opportunities, etc. Laslie should have had no trouble determining the "actual date of discrimination" with respect to each incident. *See Tinner*, 308 F.3d at 707. Theory two does not apply because Laslie's claim does not involve "an express discriminatory policy of the employer." *Id.* He points to no express Department policy that resulted in racial discrimination or retaliation.

holding that the continuing violations doctrine applies to hostile work environment claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002) ("A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."). Therefore, the Court assumes that Laslie is arguing that the continuing violations doctrine applies because he has alleged a plausible hostile work environment claim, and that at least one of the allegations that forms the basis of that claim occurred within the statutory period. *See Jajeh v. Cty. of Cook,* 678 F.3d 560, 567 (7th Cir. 2012) (holding that a hostile work environment claim was pleaded even though the complaint never used that term).

The Court concludes that none of the acts that occurred during the statutory period (that is, since March 17, 2018) could contribute to a hostile work environment claim. Therefore, the continuing violations doctrine, if applicable, would not save his claim.

The elements of a hostile work environment claim under section 1983 are the same as the elements for a claim under Title VII. *See Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 835 (7th Cir. 2015) ("Stating a hostile work environment claim under Title VII therefore establishes a viable claim to § 1983 relief."); *Alamo v. Bliss*, 864 F.3d 541, 550 n.16 (7th Cir. 2017) ("When a plaintiff uses § 1983 as a parallel remedy to a Title VII hostile work environment claim, the elements needed to establish liability are the same under both statutes."). To state a claim for hostile work environment under Title VII, a plaintiff must allege that "(1) she was subject to unwelcome harassment; (2) the harassment was based on her [race]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri*, 804 F.3d at 834. To rise to the level of a hostile work environment, conduct must be

"'sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* working environment.'" *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (emphasis in original) (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)).

Laslie stumbles at step two. He makes no allegations supporting the inference that any of the conduct that took place within the statutory period constituted harassment *on the basis of his race*. For harassment to be "based on race," it must be (1) racial in "character" or (2) racial in "purpose." *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999); *see also Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). Again, the timely conduct includes: (1) the Department's 2020 refusal to allow another employee to transfer his sick time to Laslie; (2) the Department's decision to extend Laslie's performance improvement plan into 2018; and (3) any instances of repeated or ongoing conduct (*i.e.,* the write-ups, suspensions without pay, and retaliations for filing the EEOC complaint).

The complaint does not allege harassment that was racial in character (for the timely allegations, anyway). Harassment is racial in character when it is obviously connected to the person's race (*e.g.,* the use of racial slurs, or the use of racially-charged symbols). *See Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 896 (7th Cir. 2016); *Yancick*, 653 F.3d at 544. The complaint alleges no such thing.

The complaint does not allege harassment that was racial in purpose, either. Harassment is racial in purpose when it is facially neutral, but motivated by racial animus (*e.g.,* being physically aggressive towards a co-worker because of his or her race). *See Cole*, 838 F.3d at 896. A plaintiff claiming harassment motivated by race must point to facts supporting that inference. For example, a plaintiff can allege that a defendant engaged in harassment that was

racial in character, *and* harassment that was facially neutral, and that the two kinds of harassment were "intertwined." *Id.* (quoting *Shanoff v. Illinois Dep't of Human Services*, 258 F.3d 696, 705 (7th Cir. 2001)). Alternatively, a plaintiff can point to instances of racism in the workplace generally, and argue that the work environment was so "tainted by overt racial hostility" that it is fair to assume that the harassment was racially motivated. *Id.* A plaintiff can also argue that he or she was subjected to harassment while co-workers of other races were not. *See Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999) ("One method of demonstrating that harassment is based on sex is to provide evidence of discrepancies in how the alleged harasser treats members of each sex in a mixed-sex workplace.").

Here, Laslie alleges no facts that support a plausible inference that the facially-neutral harassment he experienced during the statutory period was motivated by race. Laslie does not point to examples of overtly racist harassment. Nor does he allege that he ever heard or observed anyone at the Department make a racially charged comment, take a racially-motivated action, or do anything else that might support an inference that the Department was "tainted by overt racial hostility." *Cole*, 838 F.3d at 896.

He does allege that the Department has let "several other similarly situated White or Latino officers" engage in "[t]his . . . practice" of transferring sick time. *See* Am. Cplt., at ¶ 35 (Dckt. No. 28). But that isolated, threadbare allegation is not enough. The statement that the other officers were "similarly situated" is a legal conclusion, unadorned with facts. *Id.* And the statement that some "White or Latino" officers engaged in this "practice" is not particularly informative. *Id.* The complaint is not clear if they were the transferees or the transferors of the sick time.

In sum, Laslie alleges no facts that could reasonably support his claim that the harassment he experienced during the statutory period was motivated by race. Therefore, even if the continuing violations doctrine applied, Laslie's claim would still be untimely.

### 3. Tolling

Finally, Laslie argues that all of his allegations are timely because the statute of limitations was tolled when he filed a complaint with the EEOC. Not so. Filing a Charge of Discrimination with the EEOC in 2014 does not toll the statute of limitations for a claim under section 1983. "[B]ecause a Section 1981 claim is 'separate from and independent of' Title VII, the statute of limitations on a Section 1981 or Section 1983 claim is not tolled by the pendency of administrative action on a Title VII claim." *Carter v. D.C.*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466 (1975)); *see also Hudson v. Foxx, et al.*, 2021 WL 1222871, at *6 (N.D. Ill. 2021) (same). Therefore, filing a Charge of Discrimination with the EEOC did not stop the clock on his section 1983 claims.

### B. Plausibility

As explained above, a large portion of the section 1983 claims fall by the wayside because they are time barred. Laslie is left with the following, potentially timely, allegations to support his *Monell* claims: (1) the Department's 2020 refusal to allow another employee to transfer his sick time to Laslie; (2) the Department's decision to extend Laslie's performance improvement plan into 2018; and (3) any instances of repeated or ongoing conduct (*i.e.,* the write-ups, suspensions without pay, retaliatory harassment, and denied opportunities for advancement) to the extent that they occurred after March 17, 2018. Cicero argues that those allegations fail to state a plausible *Monell* claim for retaliation or racial discrimination. The Court agrees.

26

### 1. *Monell* Liability

"Section 1983 provides a claim against a person acting under color of law who deprives another of a federal right." *Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018). Units of local government, including cities, are "persons" for the purpose of § 1983 and can be held directly liable for damages. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). However, a municipality can be held liable only for its own role in a violation. That is, a municipality cannot be liable for the actions of its employees on a theory of respondeat superior. *See Monell*, 436 U.S. at 691. Municipal liability requires municipal culpability.

A local governing body may be liable for monetary damages under section 1983 if the plaintiff points to an unconstitutional act, and that unconstitutional act is directly caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). "In other words, to maintain a § 1983 claim against a municipality," for a particular unconstitutional act, "one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

### 2. Retaliation

Cicero argues that the remaining allegations do not state a plausible *Monell* claim for retaliation. The Court concludes that Laslie has not alleged an underlying constitutional violation.

Recall that, to successfully allege a *Monell* claim, a plaintiff must first allege an underlying constitutional violation. *See Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010) (holding that when "there is no underlying constitutional violation, [a] City cannot be liable under *Monell*"). That is, a plaintiff must first allege that her rights were violated before arguing that the violation is attributable to a municipality.

In his complaint, Laslie does not identify the constitutional right that Cicero allegedly violated. The First Amendment and the Fourteenth Amendment are possible suspects.

It seems unlikely that Laslie is claiming a Fourteenth Amendment violation. The Seventh Circuit does not recognize a general right to be free from retaliation under the Fourteenth Amendment. *See Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause."); *see also Tyler v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2018 WL 5977925, at *4–5 (N.D. Ill. 2018) (citing *Boyd* and dismissing section 1983 equal protection retaliation claim); *Williams v. City of Chicago*, 2017 WL 3169065, at *11 (N.D. Ill. 2017) (same); *Schloss v. City of Chicago*, 2019 WL 6716613, at *4 (N.D. Ill. 2019) (same); *Rufus v. City of Chicago*, 2021 WL 1088311, at *4–5 (N.D. Ill. 2021). That is, a plaintiff who alleges *only* that she reported discrimination – and then experienced retaliation as a result – has not stated a claim under the Fourteenth Amendment.

That said, the Seventh Circuit has held that a plaintiff who alleges discriminatory retaliation – that is, that her employer retaliated against her because of her membership in a protected class – *does* state a claim. *See Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015). For example, in *Locke*, the Seventh Circuit found that a male parolee stated a claim under the Fourteenth Amendment where he alleged that his parole officer retaliated against him after he

reported sexual harassment *because he was a man*, and that she would not have done so if he were a woman.  *Id.*

This Court does not understand Laslie to be alleging that he experienced discriminatory retaliation.  Rather, Laslie alleges that he engaged in a protected activity under Title VII (*i.e.,* filing a discrimination claim), and that his employer retaliated against him for filing that claim.  *See Rufus*, 2021 WL 1088311, at *4–5 (finding that plaintiff did not state a claim under the Fourteenth Amendment because "[h]ere, as in *Boyd*, Plaintiff claims only that Williams retaliated against him because he filed his lawsuit, not because of his membership in a protected class or because he embodies a protected trait"); *Schloss*, 2019 WL 6716613, at *4 (finding that plaintiff did not state a claim under the Fourteenth Amendment because plaintiff alleged that defendant retaliated against her "for the filing of an internal sex discrimination complaint and this lawsuit," not because of her sex).  Therefore, the Court does not read the amended complaint to allege a violation of the Fourteenth Amendment.

So that leaves the First Amendment.  To establish a prima facie case of retaliation under the First Amendment, a public employee must establish that:  "(1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) her speech was a motivating factor in her employer's adverse action."  *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009) (citing *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

Laslie stumbles at step one.  He makes no allegation that he engaged in constitutionally protected speech.  Speech is "constitutionally protected" if the plaintiff "spoke in the capacity of a private citizen and spoke on a matter of public concern."  *Id.* at 671; *see also Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008).  In his amended complaint, Laslie does not say what

speech he believes was "constitutionally protected."  Only two utterances might fit the bill:  the Charge of Discrimination that he filed with the EEOC, and his requests for accommodations for his kidney disease.  But that speech does not enjoy constitutional protection.

To receive constitutional protection, speech must do more than seek an individual remedy for an individual grievance.  *See Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013) ("[I]f the objective of the speech – as determined by content, form, and context – is simply to further a purely personalized grievance, then the speech does not involve a matter of public concern.").  Instead, "an objective of the speech" must have been "to bring about change with public ramifications extending beyond the personal."  *Id.*  The fact that a plaintiff's individualized grievance implicates a topic of public concern, such as discrimination, does not turn it into protected speech.  *See Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir. 1994) ("[T]he fact that an employee speaks up on a topic that may be deemed one of public import does not automatically render his remarks on that subject protected.").

For example, in an analogous case, a police officer filed a Charge of Discrimination with the EEOC complaining about the Department's failure to make a reasonable accommodation for his disabilities.  *See Sneed v. City of Harvey*, 6 F. Supp. 3d 817, 839 (N.D. Ill. 2013), *aff'd*, 598 F. App'x. 442 (7th Cir. 2015).  The Court held that the Charge of Discrimination was not protected speech.  It explained that while discrimination in the abstract is obviously a matter of public concern, the plaintiff's complaint – which described the Department's isolated decision not to give him the accommodations – "affected only him."  *Id.*  Nothing about the complaint suggested that the plaintiff wanted to bring about change that had ramifications for anyone except himself.  *Id.*; s*ee also Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) ("The context and the form of Bivens's grievance are consistent with the vindication of a personal interest,

rather than a public concern, and the content of the grievance – while touching a subject of potential interest to the public – does not convince us that his purpose was anything other than personal.").

The same logic applies to Laslie's Charge of Discrimination as well as his direct requests for accommodations. Laslie's Charge focuses entirely on himself. Nothing about it indicates that he intended "to bring about change with public ramifications extending beyond the personal." *Kristofek*, 712 F.3d at 986. He speaks in the first person: "I requested a reasonable accommodation which was not provided," "I have been subject to different terms and conditions of employment than White employees," "Respondent refuses to return me to work," "I believe I have been discriminated against because of my race," and "I believe I have been discriminated against because of my disability." *See* Ex. 1 to Def.'s Mtn. to Dismiss, at 2 (Dckt. No. 29-1). He does not touch on Department policies or practices, and he does not mention the treatment of any other employees. So, while the Charge of Discrimination touches on a "subject of potential interest in the public" – discrimination on the basis of disability and on the basis of race – it "does not convince [the Court] that his purpose was anything other than personal." *Bivens*, 591 F.3d at 561.

Laslie's requests for accommodations for his kidney disease are not protected speech for the same reasons. In his amended complaint, Laslie alleges that he requested accommodations for himself at least four times. *See* Am. Cplt., at ¶¶ 17, 21, 23, 25 (Dckt. No. 28). He doesn't say exactly what he asked for each time. But nothing in the complaint supports the inference that he intended those requests "to bring about change with public ramifications extending beyond the personal." *Kristofek*, 712 F.3d at 986. Instead, the most plausible inference is that Laslie repeatedly asked for time off for his dialysis treatment – a strictly personal purpose.

### 3. Race Discrimination

Next, Cicero argues that Laslie's remaining allegations do not state a plausible *Monell* claim for race discrimination. This argument, too, has merit.

This time, Laslie plausibly alleges an underlying constitutional violation. A plaintiff claiming employment discrimination against an individual under section 1983 on a disparate treatment theory must allege that his employer "instituted a specific adverse employment action against him" because of his race. *Phillips v. Baxter*, 768 F. App'x. 555, 559 (7th Cir. 2019); *see also Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011) (explaining that Title VII and section 1983 race discrimination employment claims are analyzed under the same standards).

Laslie alleges that the various members of the Department took at least two timely adverse actions against him because of his race. First, someone issued him written reprimands and suspended him without pay. Second, someone denied another employee's request to transfer their extra sick days to Laslie.

However, Laslie fails to plausibly plead that those underlying violations are the result of a city policy or custom. Recall, a plaintiff claiming employment discrimination against a unit of local government, such as the Town of Cicero, must allege that the city "instituted a specific adverse employment action against him" because of his race, and then allege facts supporting an inference that the violation was directly caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas*, 604 at 303.

The complaint does not contain any allegations supporting a plausible inference that Cicero might be liable under any of those three theories. He does not point to an "official policy

adopted and promulgated by its officers" that resulted in any of those violations. *Id.* He points to no other instances in which the Department treated other black employees differently than white employees, let alone a pattern of instances "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016); *see also Gable*, 296 F.3d at 537. And he does not say what member of the Department was responsible for issuing the reprimands and suspensions, extending his time on the plan, or denying the sick day transfer request. As a result, he does not allege that the culprit was "an official with final policy-making authority." *See Thomas*, 604 F.3d at 303.

Therefore, Laslie's claim against Cicero for race discrimination under § 1983 is dismissed.

## Conclusion

Defendant's motion to dismiss is granted in its entirety. All claims against the Town of Cicero (Counts I, III, V-1, V-2, VII, VIII, & IX) are dismissed. The Court grants Plaintiff leave to file a second amended complaint by May 24, 2021.

Date: May 10, 2021

Steven C. Seeger
United States District Judge